UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HAN LUU THI GARCIA,                    )
    Plaintiff,                         )
                                     )
            v.                         )   Civil Action No. 1:16cv553
                                      )
CAROLYN W. COLVIN,                     )
Commissioner of Social Security,      )
    Defendant.                         )

## REPORT & RECOMMENDATION

THIS MATTER comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 12) and Defendant's Motion for Summary Judgment (Dkt. 14.) Han Luu Thi Garcia ("plaintiff" or "claimant") seeks judicial review of the final decision of the Commissioner of Social Security ("defendant") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34. Pursuant to 28 U.S.C. § 636 (b)(1)(B), the undersigned Magistrate Judge makes the following recommendation.

## I. Introduction

### A. Background

Plaintiff filed her application for disability insurance benefits on June 7, 2012, alleging disability as of July 1, 2007. (Administrative Record[1] ("R.") 8, 244-45.) Plaintiff's claims were initially denied on October 16, 2012, and again upon

---

[1] The certified administrative record was filed under seal on August 1, 2016, pursuant to Local Civil Rules 5(B) and 7(C)(1). (Dkt. 8.)

reconsideration on May 3, 2013. (Id. at 8, 97-128.) On September 18, 2015, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 8, 34-35.)

ALJ Michael A. Krasnow held a hearing on August 10, 2015, during which he received testimony from plaintiff, represented by counsel, and Tony Malancin, an impartial vocational expert. (Id. at 8, 59-83.) On September 10, 2015, the ALJ issued his decision, finding that plaintiff was not disabled under Sections Sections 216(i) and 223(d) of the Social Security Act through December 31, 2012, the last date plaintiff was insured. (Id. at 8, 38-58.) The Appeals Council for the Office of Disability Adjudication and Review ("Appeals Council") denied plaintiff's request for review of the ALJ's decision on March 17, 2016. (Id. at 8, 1-4.) Having exhausted her administrative remedies, plaintiff filed a Complaint for judicial review on May 18, 2016. (Dkt. 1.) Defendant answered on August 1, 2016. (Dkt. 5.) The parties then filed cross-motions for summary judgment (Dkts. 12, 14), and the matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d

2

1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. Hays, 907 F.2d at 1456. While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987), *superseded by statute on other grounds as stated in* Stroup v. Apfel, No. 96-1722, 2000 U.S. App. LEXIS 2750, at *12-13 (4th Cir. Feb. 24, 2000).

In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). The correct law to be applied includes the Act, its implementing regulations, and controlling case law. See Coffman, 829 F.2d at 517-18. With this standard in mind, the Court next evaluates the ALJ's findings and decision.

### III. <u>ALJ's FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. 20 C.F.R. §§ 404.1520, 416.920. As noted above, the Court examines this five-step process on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence in the record. In accordance with the five-step sequential analysis, the ALJ in this case made the following findings of fact and conclusions of law.

First, plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of July 11, 2007, through her date last insured ("DLI") of December 31, 2012. (R. at 43.) Second, through the DLI, plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, and affective mood disorder. (<u>Id.</u>) Third, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, through her DLI. (<u>Id.</u> at 44.) Fourth, through her DLI, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that plaintiff could frequently perform handling and fingering

4

bilaterally, with the limitation that plaintiff should avoid concentrated exposure to vibration and hazards, including dangerous machinery, unprotected heights, and moving parts, and with the additional limitation to simple, routine, repetitive tasks with no production rate for pace of work. (Id. at 46.) As such, plaintiff was capable of performing past relevant work as a waitress. (Id. at 52.) Fifth, considering plaintiff's RFC, age, education, and work experience, plaintiff could perform past relevant work, as this work did not require the performance of work-related activities precluded by the plaintiff's RFC. (Id.) Therefore, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 1, 2007, the alleged onset date, through December 31, 2012, the date plaintiff was last insured. (Id. at 53.)

## IV. RELEVANT FACTUAL BACKGROUND

Plaintiff was 62 years old on December 31, 2012, her DLI. (R. 62-64.) Plaintiff was born in Vietnam and has a 10th grade education (Id. at 284.) Plaintiff worked previously as an aid to handicapped persons and as a waitress. (Id. at 67-68.) Plaintiff alleged disability since July 2007 due to sleeping problems, dizziness, depression, leg spasms, hand and wrist pain, headaches, memory issues and forgetfulness. (Id. at 97.)

### A. Testimony at the Hearing before the ALJ

At the hearing before the ALJ on August 10, 2015, plaintiff

5

testified that she stopped working because the pain in her hands did not allow her to lift any heavy objects while working as a waitress.(Id. at 67-68.) Plaintiff testified to having pain in both hands, particularly her dominant left hand. (Id. at 73.) Plaintiff further stated that she had difficulties sleeping due to the pain in her hand, therefore she takes Ambien. (Id. at 74.) In addition, plaintiff stated she takes the medications Celebrex, Fexofenadine, Meloxicam, and Voltaren for the pain in her hand. (Id. at 75.) Plaintiff added she cannot cook, clean, or shop by herself. (Id. at 76.) Plaintiff described difficulties with waitressing due to her hand. (Id. at 77-80.)

At the administrative hearing, the vocational expert testified that an individual with plaintiff's RFC could perform work as a waitress but not as an aid to the handicapped. (Id. at 72.) The vocational expert further testified that plaintiff's past work as a waitress was classified as unskilled and as an aid to the handicapped as semi-skilled. (Id. at 80-81.) The vocational expert came to this conclusion from plaintiff's description of her past position and found plaintiff's work did not constitute the work of a waitress position at SVP 4 but as DOT 352.677-018 waitress. (Id.) The vocational expert also acknowledged the skills would not be transferrable and the functional requirements for a waitress position would require more than occasional use of bilateral hands. (Id.) When posed

6

with a hypothetical by the ALJ, the vocational expert testified that an individual with the same characteristics and limitations as plaintiff could perform work as a waitress. (Id. at 72.) Plaintiff's history of surgeries was also discussed. (Id. at 82.)

### B. Medical Treatment Records through DLI[2]

Proceeding chronologically though plaintiff's medical records, which include hospital records from multiple military medical centers, in October 2004, plaintiff was referred for depression counseling due to her distress about her son's accident. (R. at 571.) In February 2005, medical records related to plaintiff's hand indicated a persistent deformity suggesting likely injury to the extensor mechanism of the fifth digit of plaintiff's hand and lucency at the sesmoid associated with the second metacarpal bone. (Id. at 437–38.) X-rays of plaintiff's spine from June and February 2005 indicate mild C5–C6 osteoarthritic changes and mild spondylosis deformans without evidence of compression deformity. (Id. at 436–37.) A December 2005 CT scan revealed normal results of the brain. (Id. at 434.) In July 2006, plaintiff was again referred for an evaluation for depression and insomnia. (Id. at 558.) Later that month,

---

[2] The parties in their cross motions for summary judgment have focused on the facts regarding plaintiff's alleged hand and neurological impairments. Furthermore, plaintiff's assertions of error by the ALJ relate only to plaintiff's limitations due to her pain and difficulties in concentration, persistence, and pace. Consequently, the undersigned has limited this discussion to the facts surrounding these issues.

plaintiff was evaluated for depression and given a trial
medication of Celexa. (Id. at 861-62.) In July 2007, plaintiff
visited her primary care doctor to address on and off pain in
her hand. (Id. at 1184-85.) Upon examination, plaintiff had no
pain and her hand motion was normal. (Id.) In 2008, a bone
densitometry of plaintiff reported findings consistent with
osteopenia. (Id. at 429-30.) A follow-up exam was recommended in
1-2 years from that time. (Id.) During 2008, plaintiff also had
a head CT in which no abnormalities were found. (Id. at 1106.)
In 2010, plaintiff complained of a headache during a doctor
visit but reported no generalized pain. (Id. at 1104.) After
more than three years, plaintiff reported in January 2011 that
she had hand and knee pain which occurred on and off. (Id. at
1098.) Exams indicated minimal degenerative changes in the first
MCP joints of plaintiff's hand and mild degenerative change in
the patellofemoral joints and medial compartments of the knee
which suggested right patella tendinosis. (Id. at 428.) In March
2011, plaintiff reported being dizzy and off-balance with a
headache. (Id. at 1095.) The next month, plaintiff reported she
was feeling fine. (Id. at 1092.) In June 2011, plaintiff visited
the doctor for hand and leg pain and rated the pain as mild, 3
out of 10 on the scale for pain. (Id. at 1081.) In July 2011,
reports indicate plaintiff felt fine although plaintiff reported
generalized pain in her stomach. (Id. at 1077.) In October 2011,

8

plaintiff reported being pain free. (Id. at 1074.) In November 2011, plaintiff reported hand pain and memory issues but it was noted she was feeling fine with no new symptoms. (Id. at 1056.) In December 2011, plaintiff was evaluated by neurologist Haideh Y. Sabet, M.D. for a complaint of memory difficulties which resulted in Dr. Sabet recommending a sleep study and EEG. (Id. at 412-13.) In March 2012, plaintiff had a follow up appointment with neurologist Dr. Sabet in which the normal MRI results were discussed with plaintiff. (Id. at 414-15.) In May 2012, plaintiff was seen by John P. Byrne, M.D., at the orthopaedic institute who diagnosed plaintiff with severe trapeziometacarpal arthritis in her left hand. (Id. at 419-20.) Dr. Byrne referred plaintiff to Ryan Jander, M.D., who evaluated plaintiff in June 2012. (Id. at 421.) Dr. Jander noted plaintiff had swelling but full range of motion and full strength of intrinsic muscles. (Id.) Dr. Jander prescribed a steroid injection, a thumb brace, and topical Voltaren gel. (Id. at 422.) In July 2012, plaintiff had her left ankle examined due to a fall. (Id. at 1385.) There was no dislocation or fracture reported but mild degenerative changes were indicated. (Id.) In November 2012, plaintiff was referred to orthopedics clinic for injection therapy but reported no pain. (Id. at 1420.)

### C. Medical Opinions by Treating Physicians after DLI

After plaintiff's date last insured in December 2012, plaintiff sought treatment at Madigan Army Medical Center, Fort Lewis WA. (R. 1382-83.) Plaintiff's physical exam continued to be normal despite her reports of leg pain at the April 2013 appointment. (Id. at 1391.) In July 2013, plaintiff underwent surgery by LTC Patrick Pollock on her left hand including: an episiotomy, MCP left thumb fusion, and a left wrist volar ganglion cyst excision. (Id. at 1469-71, 1490.) Post surgery in August 2013, plaintiff reported no pain and entered occupational therapy. (Id. at 1476.) In April 2014, plaintiff reported no pain after another surgery that removed hardware tear capsulotomy and z-plasty. (Id. at 1581.) In May 2014, plaintiff reported feeling fine with no new symptoms. (Id. at 1574.) In August 2014, 5 months after surgery, plaintiff reported no pain in her thumb and was pleased with the results of the operation. (Id. at 1560.) In September 2014, plaintiff reported lower back pain from falling down stairs two weeks prior as well as stomach pain. (Id. at 1614, 1617.)

### D. State Agency Medical Opinions

On October 2, 2012, Dr. R.S. Kadian, M.D., a state agency physician, reviewed the evidence of record in plaintiff's file, including the medical evidence, and concluded that plaintiff's conditions of arthritis in her hands and wrists, arthritis and

10

degenerative changes in her spine and knees, difficulty with memory and her depression, result in some limitations in her ability to perform work related activities. (Id. at 109.) Dr. Kadian further concluded these limitations do not prevent plaintiff from performing her past work as a waitress and are not severe enough to keep plaintiff from working. (Id.) Dr. Kadian noted that plaintiff may be somewhat limited in the use of her hands for delicate tasks, but the evidence shows she is able to use her hands for frequent and basic grasping and handling of objects. (Id.) Additionally, Dr. Kadian stated "although those conditions may affect your ability to perform some activities, the medical evidence indicates that you are still able to take care of personal needs, understand, remember, cooperate with others, and perform your normal daily activities." (Id.) On May, 14, 2013, Dr. Michelle Hoy-Watkins, Psy.D., a state agency psychologist, also reviewed plaintiff's medical records and similarly concluded the limitations did not prevent plaintiff from performing the work she did in the past as a waitress. (Id. at 127.) Dr. Hoy-Watkins noted that plaintiff was receiving treatment for her depression, forgetfulness, and sleep apnea. (Id.) Additionally, Dr. Hoy-Watkins stated "the medical evidence shows you have a good ability to stand and walk throughout the workday even though you experience leg spasms. The evidence shows your dizziness and

headaches are not of such frequency of severity that they
interfere with your daily activities." (Id.)

## V. ANALYSIS

Plaintiff raises three issues on review. First, she argues
the ALJ did not explicitly discuss each function listed in his
ruling that plaintiff could perform her past work. (Dkt. 12 at
7.) Second, plaintiff contends the ALJ did not account for
plaintiffs limitations in sustaining concentration and
persistence. (Id. at 8.) Finally, plaintiff argues the ALJ erred
in accepting the vocational expert testimony that plaintiff's
past work was as a waitress at a club. (Id.) Each argument is
addressed in turn.

### A. The ALJ Properly Assessed Plaintiff's RFC

Plaintiff first contends remand is necessary because the
ALJ erred by failing to do a function by function analysis in
the case to find plaintiff could perform her past work. (Dkt. 12
at 7.) Plaintiff states the ALJ "simply concluded that she could
do light work with some restrictions… did not provide meaningful
analysis of Ms. Garcia's ability to perform her past work" and
"did not explain why he concluded she could frequently perform
handling and fingering." (Id.) Defendant argues the ALJ
considered all relevant function limitations and under the
deferential substantial evidence standard, this Court should
affirm the ALJ's reasonable RFC analysis. (Dkt. 14 at 12-13.)

12

After step three of the ALJ's sequential analysis, but
before deciding whether a claimant can perform past relevant
work at step four, the ALJ must determine the claimant's RPC. 20
C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). This assessment must
consider all medically determinable impairments, including non-
severe medically determinable impairments. See 20 C.F.R. §
404.1545(a)(2); Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir.
2015.) In analyzing a claimant's abilities, the ALJ must first
identify the nature and extent of the claimant's functional
limitations and restrictions and assess the remaining capacity
for work-related activities on a regular and continuing basis,
that is, for eight hours a day, five days a week. 20 C.F.R. §
416.945(b). The ALJ must provide a narrative discussion
describing how the evidence supports each conclusion. Mascio,
780 F.3d at 636 (citing SSR 96-8p). In making this assessment,
however, the ALJ does not need to provide a function by function
analysis, but must "assess a claimant's capacity to perform
*relevant* functions" to allow for meaningful review of the ALJ's
conclusions when the record contains contradictory evidence
about a claimant's capability to perform a particular function.
Mascio, 780 F.3d at 636-37 (emphasis added). The RPC assessment
must be based on all available evidence in the record, such as
objective medical evidence, medical signs and laboratory
findings, the effects of treatment, reports of daily activities,

13

lay evidence, recorded observations, medical source statements, effects of symptoms reasonably attributed to a medically determinable impairment and evidence from attempts to work, need for a structured living environment, and work evaluations, if available. SSR 96-8p.

Here, the ALJ met the requirements of SSR 96-8p by providing a narrative analysis of the available evidence. The ALJ considered plaintiff's reports that she could not lift heavy objects, had problems using her hands, had difficulty sleeping due to the pain, and had problems with her memory. (R. at 45-47.) The ALJ found plaintiff's impairments to be non-severe because they did not exist for a continuous period of 12 months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations. (Id. at 44.) The ALJ acknowledged plaintiff's and her husband's statements regarding her daily activities, medical treatment evidence, and the medical opinion evidence. (Id. at 47-52.) The ALJ gave great weight to the agency expert medical opinions which stated plaintiff could handle and finger although in a limited manner. (Id. at 105-06, 124.) These opinions were consistent with the credible evidence of record upon analysis of plaintiff's medical treatment history. The medical records of plaintiff's treatment history show that plaintiff had many

14

periods of not feeling pain.

Additionally, the Court must uphold the ALJ's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Charter, 76 F.3d at 589. Plaintiff's own statements in the record support the ALJ's assessment. Plaintiff reported in her function report dated July 2012 that she could do light chores, drive a car, and go shopping weekly. (R. at 302-09.) Plaintiff's treatment records further support the ALJ's RFC determination. During much of the relevant time period, the records show plaintiff could frequently handle and finger and plaintiff did not report pain. Although plaintiff has surgery for her pain, the record reflects that it was successful and plaintiff reported to that effect. (Id. at 51.) Further, plaintiff has not provided sufficient evidence to contradict the notion that she could perform light work.

Consequently, in determining and limiting plaintiff to light work as defined in 20 C.F.R. 404.1567(b), the ALJ conducted a reasonable analysis of plaintiff's work related abilities which should be affirmed.

## B. The ALJ's RFC Assessment Adequately Accounted for Plaintiff's Moderate Limitations in Concentration and Persistence

Plaintiff further claims the ALJ erred by failing to take into account plaintiff's limitations in sustaining concentration

and persistence. (Dkt. 12 at 8.) Defendant argues the ALJ reasonably accounted for plaintiff's credibly established limitations in concentration, persistence, or pace by limiting her to work involving simple, routine, and repetitive tasks with no production rate requirements. (Dkt. 14 at 13.)

In Mascio, the Fourth Circuit held that the ALJ erred "by ignoring (without explanation) [the plaintiff's] moderate limitation in her ability to maintain her concentration, persistence, or pace ..." 780 F.3d at 633. The ALJ in Mascio found that the plaintiff possessed moderate limitations in maintaining her concentration, persistence, or pace; however, the hypothetical the ALJ posed to the VE "said nothing about Mascio's mental limitations." Id. at 637-38. The Fourth Circuit specified that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' " Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).

District courts in this circuit have held an ALJ satisfies the Mascio standard by providing a detailed discussion of a plaintiff's capacity for concentration, persistence, and pace. See, e.g., Sizemore v. Colvin, No. 5:15cv53, 2016 WL 483140, at *3 (W.D.N.C. February 5, 2016); see also St. Clair v. Colvin, No. 7:13cv00571, 2015 WL 5310777, at *5-7 (W.D. Va. Sept. 11,

16

2015); see also Mitchell v. Colvin, No. 7:14cv00041, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015); see also Thomas v. Colvin, No. 4:14CV105, 2016 WL 1070826, at *4 (E.D. Va. Mar. 16, 2016).

Here, the ALJ determined plaintiff has the RFC to perform "light work as defined in 20 CFR 404.1567(b) except she can frequently perform handling and fingering bilaterally; must avoid concentrated exposure to vibration and hazards, including dangerous machinery, unprotected heights, and moving parts; and she is limited to simple, routine, repetitive tasks with no production rate for pace of work." (R. at 46.) The ALJ's RFC determination is supported by substantial evidence and his discussion of plaintiff's capacity for concentration, persistence, and pace satisfies the Fourth Circuit's holding in Mascio.

Unlike in Mascio, where the ALJ did not address mental limitations in the RFC, the ALJ in this case limited plaintiff to simple, routine tasks with no production pace requirements to account for plaintiff's difficulties in concentration, persistence, and pace. (Id.) The ALJ considered all of the medical evidence including the combined effects of the plaintiff's severe and non-severe impairments in the consideration. (Id. at 52.) The ALJ assessed the evidence of plaintiff's daily activities, social functioning, depression,

17

and difficulty with her memory to conclude plaintiff's mental impairment does not cause at least two marked limitations for an extended duration. (Id. at 45.)

The record in this case contained evidence that plaintiff could stay on task throughout the workday. The state agency expert psychologist found that plaintiff "was not significantly limited" in her "ability to complete a normal workday and workweek without interruption…and to perform at a consistent pace without an unreasonable number and length of rest periods." (Id. at 107, 125.) Notably, the record also contains plaintiff's statements from the hearing before the ALJ, in which plaintiff testified that she had trouble remembering orders, forgets a lot of things, and has to write orders down. (Id. at 78.)

Plaintiff claims the ALJ failed to incorporate the limitations identified by the state agency expert psychologist that plaintiff would only be able to maintain concentration for a 2 hour period. (Dkt. 12 at 8.) To the contrary, the state agency expert found plaintiff could "maintain concentration and attention for two hour periods in order to complete an 8 hour workday. (R. 107, 125.) Further, plaintiff did not complain about having trouble staying on task, rather she maintained general issues with her memory. (Id. at 1056.)

Therefore, the ALJ's RFC assessment reasonably accounted for plaintiff's credibly established limitations and

18

should be affirmed.

## C. The ALJ Properly Categorized Plaintiff's Past Relevant Work

Finally, plaintiff contends the ALJ's erred accepting the vocational expert's testimony that plaintiff's past relevant work was a waitress at a club, DOT 352.677-018, instead of a different job in the Dictionary of Occupational Titles (DOT), such as a general waitress job. (Dkt. 12 at 8.) Defendant counters the Court should reject this argument because "the ALJ reasonably relied on the vocational expert's testimony to identify plaintiff's past work and find that plaintiff was not disabled because she could perform that work as it was performed generally in the national economy." (Dkt. 14 at 16.)

Pursuant to SSR 82-62 and SSR 00-4p, the ALJ found the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (R. at 53.) A review of the testimony of the hearing before the ALJ demonstrates that the positions described are supported by substantial evidence in the record. The ALJ adequately explained why the vocational expert's testimony is consistent with the DOT job descriptions. (Id. at 52-53.)

Plaintiff testified at the hearing before the ALJ that she worked as a waitress and an aid to handicapped persons. (R. at 67-68.) In plaintiff's work history report, plaintiff's described her job as serving meals to customers, picking up

19

dishes, and carrying trays or drinks. (Id. at 314-15.) The
vocational expert testified at the hearing before the ALJ that
plaintiff's past work was more similar to the unskilled position
rather than the skilled waitress job. (R. at 52-53.) The
vocational expert identified plaintiff's past work as a
waitress, informal (DOT 352.677-018, SVP 2) as light in exertion
and a handicap assistant as a nurse assistant (DOT 354.377-014,
SVP 3) as medium in exertion. The vocational expert testified
that an individual with plaintiff's RFC could perform work as a
waitress but not as an aid to the handicapped. (Id. at 72.)
Focusing on the waitressing position, the vocational expert came
to this conclusion after analyzing plaintiff's description of
her job and the information provided. (Id. at 52-53.) The
vocational expert stated there is generally more to the waitress
position than described by plaintiff and he did not believe
plaintiff's past work was performed at an SVP level 4 waitress.
(Id. at 52-53.)  This conclusion was also based on plaintiff not
having a full understanding of the English language. (Id.)

     The undersigned finds there is substantial evidence to
support the ALJ's finding that plaintiff could return to her
past relevant work as generally performed.

## VI. <u>RECOMMENDATION</u>

For the reasons set forth, the undersigned Magistrate Judge finds that the ALJ's decision is supported by substantial evidence and does not contain legal error.  Therefore, the undersigned recommends that plaintiff's Motion for Summary Judgment be DENIED and defendant's Motion for Summary Judgment be GRANTED.

## VII. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

December 12, 2016
Alexandria, Virginia